[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The defendant, ASA Real Estate Services (ASA), moves this court for summary judgment. The defendant argues that the plaintiffs, Fleet Services Corporation (Fleet), complaint sounds in tort and is therefore time barred, entitling the defendant to judgment as a matter of law. It is also the position of the defendant that Count V of the plaintiffs complaint fails to state facts sufficient to establish a fiduciary relationship between the defendant and the plaintiff, so that its claim for breach of a fiduciary relationship must independently fail as a matter of law.
The defendant submitted the motion for summary judgment with a memorandum of law and supporting exhibits, in accordance with Practice Book §§ 17-44 through 17-46. The plaintiff filed a memorandum of law in opposition to the defendant's motion, with accompanying documents, on May 13, 2002. Oral argument was heard by this court on May
 FACTS
On November 17, 1995, Shawmut Bank agreed to loan Dr. Anthony Sterling and his wife $450,000 in exchange for a note and second mortgage on their home, which was located at 54 Harrison Drive, Wolcott, Connecticut. Prior to the loan approval, and at the request of Shawmut Bank, the defendant, ASA, performed an appraisal of the property and concluded that the market value of the property was $1,070,000, as of September 27, 1995. Subsequently, Shawmut Bank assigned the Sterling mortgage to Fleet, in connection with the merger of the two banks.
On or about April 5, 1999, the Sterlings defaulted on their first and second mortgages. The holder of the first mortgage, Webster Bank, moved to foreclose the property, at which time an appraisal was performed, which determined the market value of the property to be $350,000. Accordingly, there was insufficient equity to satisfy the second mortgage CT Page 11995 held by the plaintiff Susan Anderson of Fleet contacted Anna Petrides of ASA in June of 1999 disputing the accuracy of the 1995 appraisal. Fleet also sought compensation from ASA for the losses it felt attributable the 1995 ASA appraisal (Defendant's exhibit F). Petrides responded by letter dated June 21, 1999 and enclosed a "full copy" of the appraisal. After reviewing the 1995 appraisal, it was the opinion of ASA that the property in question "is valued the same today as it was in 1995, give or take 10%, assuming the condition of the home is the same as it was in 1995." (Defendant's exhibit I). When Fleet was unable to recover from ASA for its losses, this action was commenced on November 30, 1999. The second amended complaint is the operative complaint and is comprised of six counts: professional negligence (count I); breach of contract (count II); breach of the implied movenant of good faith and fair dealing (count III); negligent misrepresentation (count IV); reach of fiduciary duty (count V); and breach of implied contract (count VI).
 DISCUSSION
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence [of] any genuine issue of material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Miles v. Foley,253 Conn. 381, 385-86, 752 A.2d 503 (2000). "The test is whether a party would be entitled to a directed verdict on the same facts." Sherwood v.Danbury Hospital, 252 Conn. 193, 201, 746 A.2d 730 (2000).
"Summary judgment may be granted where the claim is barred by the statute of limitations." Doty v. Mucci, 238 Conn. 800, 806, 679 A.2d 945
(1996). Summary judgment is appropriate on statute of limitations grounds when "material facts concerning the statute of limitations [are] not in dispute. . . ." Burns v. Hartford Hospital, 192 Conn. 451, 452,472 A.2d 1257 (1984). It is also appropriate where the evidence submitted "do[es] not set forth circumstances which would serve to avoid or impede the normal application of the particular limitations period." (Internal quotation marks omitted.) Collum v. Chapin, 40 Conn. App. 449, 453,671 A.2d 1329 (1996). CT Page 11996
 I. COUNT ONE Professional Negligence
Count one of Fleet's complaint alleges professional negligence against ASA. ASA moves for summary judgment on the ground that Fleet's claim for professional negligence is barred by the three year statute of limitations imposed on tort claims pursuant to General Statutes § 52-577. Section 52-577 states that: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." ASA argues that the date of the act or omission complained of was either September 27, 1995, when ASA performed the appraisal on the Sterling's property, or November 17, 1995, when Shawmut advanced the sum of the second mortgage to the Sterlings. Because Fleet commenced this action on November 30, 1999, over four years later, ASA argues that the claim is time barred.
In opposition to the motion for summary judgment, Fleet argues that its claim against ASA alleging professional negligence is timely because the three year statute of limitations imposed by § 52-577 is tolled pursuant to the continuing course of conduct doctrine. Pursuant to this doctrine, Fleet argues that its claims accrued when it first discovered ASA's alleged negligent appraisal, which was in 1999. Because Fleet commenced this action on November 30, 1999, it argues its claim is timely.
At issue is whether a genuine issue of material fact exists as to whether the continuing course of conduct doctrine applies to the underlying claim of professional negligence, thus tolling the applicable statute of limitations. Both parties agree that professional negligence is a tort and is therefore subject to a three year statute of limitations pursuant to § 52-577. Under Connecticut law, "a statute of limitations may be tolled under the continuing course of conduct doctrine, thereby allowing a plaintiff to commence his or her lawsuit at a later date." (Citations omitted; internal quotation marks omitted.) Sherwood v.Danbury Hospital, supra, 252 Conn. 202-03.
To determine whether the continuing course of conduct doctrine applies in this case, the court "must determine whether there is a genuine issue of material fact with respect to whether the defendant: (1) committed an original wrong upon the plaintiff (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) breached that continuing duty." Sherwood v. Danbury Hospital, supra, 252 Conn. 206.
The court first considers whether ASA committed an original wrong upon CT Page 11997 Fleet. In its complaint, Fleet alleges, inter alia, that "ASA negligently valued the property at $1,070,000 even though the property had an assessed value of only $331,800 and other houses in the neighborhood were in the range of only $250,000 to $600,000." (Plaintiff's complaint, ¶ 30 a). "But for ASA's appraisal of the [p]roperty at a value of $1,070,000, Shawmut would not have entered into the [s]econd [m]ortgage with Dr. Sterling and Yolanda Sterling, and/or advanced to Dr. Sterling and Yolanda Sterling the sum of $450,000." (Plaintiff's complaint, ¶ 10). "ASA owed a duty of care to Shawmut, and to its successor-in-interest, Fleet, to perform its services in a good workman-like manner." (Plaintiff's complaint, ¶ 29). "ASA, by its agents, employees and representatives, breached that duty in that it was negligent and careless in its performance of the appraisal of the subject property in that [inter alia] ASA negligently failed to use reasonable comparable properties in appraising the property, but instead used properties located in other towns more than ten (10) miles from the property and in towns which are more desirable and affluent than Wolcott." (Plaintiff's complaint, ¶ 30 d). Fleet alleges that as a result of ASA's negligence, it incurred damages. ASA denies these allegations and in a letter dated June 21, 1999, asserts that the property "is valued the same today as it was in 1995, give or take 10%, assuming the condition of the home is the same as it was in 1995." (Defendant's exhibit I).
Upon viewing the allegations in the light most favorable to Fleet, this court concludes that genuine issues of material fact do exist with respect to whether ASA committed an original wrong upon Fleet; specifically, whether the discrepancies between the appraised value of the property and the actual value of the property constituted professional negligence on the part of ASA.
The court next considers whether ASA owed a continuing duty to Fleet that was related to the alleged original wrong. "The gravamen of the continuing course of conduct doctrine is that a duty continues after the original wrong is committed." Golden v. Johnson Memorial Hospital, Inc.,66 Conn. App. 518, 525, 785 A.2d 234, cert. denied, 259 Conn. 902,789 A.2d 990 (2001). "[I]n order to support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. . . . Where [our Supreme Court has] upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a specialrelationship between the parties giving rise to such a continuing duty orsome later wrongful conduct of a defendant related to the prior act." CT Page 11998 (Emphasis added) Sherwood v. Danbury Hospital, supra, 252 Conn. 203. "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand." Golden v.Johnson Memorial Hospital, Inc., supra, 66 Conn. App. 526.
Therefore, in order to avail itself of this doctrine, Fleet must show that a genuine issue of material fact exists as to whether ASA remained under a duty to it after the alleged negligent appraisal in 1995. Fleet argues that the special relationship between itself and ASA and/or subsequent wrongful conduct on the part of ASA related to the alleged negligent 1995 appraisal supports a finding by this court that such a duty continued to exist.
 A. Special Relationship
Fleet alleges that its special relationship with ASA gives rise to a continuing duty on the part of ASA to invoke the continuing course of conduct doctrine. Fleet argues therefore, that ASA had a continuing duty to inform Fleet of the alleged negligent 1995 appraisal. Fleet alleges that the special relationship between ASA and Fleet was ongoing and continuous. Fleet alleges that ASA was "one of a few select appraisers on Fleet's select group of approved appraisers." (Plaintiff's memorandum, pg. 8, ¶ 2). Furthermore, "Fleet relied upon ASA's representations of its ability and willingness to diligently and professionally carry out its professional obligations in providing appraisal services to ASA; indeed ASA expressly sought and achieved such a degree of trust and reliance that Fleet would make, or even increase, loans based predominantly or solely upon ASA's appraisals, as was the case herein. . . . This evidences a continuous course of conduct and numerous questions of fact regarding what the parties intended as to the scope of the appraisal process." (Plaintiff's memorandum, pg. 8, ¶ 2; pg. 9, ¶ 1).
The court finds no evidence to support Fleet's assertions that a special relationship existed between itself and ASA. Despite this finding, even assuming arguendo that Fleet and ASA did have a special relationship, such as a fiduciary, it still does not give rise to a continuing duty on the part of ASA. Courts hold that "under the continuing course of duty doctrine, a fiduciary would be required to disclose what he knows, . . ." Blanchette v. Barrett, 229 Conn. 256,281, 640 A.2d 74 (1994). In the present case, there is no genuine issue of material fact as to whether ASA concealed a lower appraisal value of the property from Fleet. Fleet submits no proof that ASA had any awareness of any alleged defect in the 1995 appraisal. CT Page 11999
The court notes that "the [continuing course of conduct] doctrine is generally applicable under circumstances where [i]t may be impossible to pinpoint the exact date of a particular negligent act or omission that caused injury or where the negligence consists of a series of acts or omissions and it is appropriate to allow the course of [action] to terminate before allowing the repose section of the statute of limitations to. . . ." Rosenfield v. Rogin, Nassau, Caplan, Lassman Hirtle, LLC., 69 Conn. App. 151, 160-61, 795 A.2d 572 (2002). In this case, however, it is not impossible to pinpoint the exact date of the alleged negligent act, nor is there a series of acts. There was one, single act, the 1995 appraisal. There was not a continuous relationship with respect to this specific appraisal. ASA's duty, if any, terminated upon completion of the appraisal.
Based upon the foregoing reasons, the court finds that no genuine issue of material fact exists as to whether there was a special relationship between Fleet and ASA to invoke a continuing duty upon ASA.
 B. Subsequent Wrongful Conduct
Fleet alternately argues that ASA owed it a continuing duty because ASA engaged in later wrongful conduct that was related to the original wrong, namely, the alleged negligent 1995 appraisal. Specifically, Fleet alleges that "[i]n 1999, ASA made corrections to the ASA appraisal and created a second version of the appraisal (hereinafter, the "[a]mended ASA [a]ppraisal), in an attempt to correct the defects and errors in the ASA [a]ppraisal." (Plaintiff's complaint, ¶ 21). Fleet further alleges that "[t]he ASA appraisal and the [a]mended ASA [a]ppraisal differ in several material respects . . . the [a]mended ASA [a]ppraisal was not provided by ASA to Fleet until 1999." (Plaintiff's complaint, ¶¶ 22, 24). ASA denies the existence of an amended appraisal and argues that the "memos and letters between Fleet and ASA ([e]xhibits E-J), taken together, clearly show that there was no amended appraisal. (Defendant's memorandum, IV A, pg. 9, ¶ 1).
The evidence before this court discloses that Fleet sent ASA a letter requesting ASA to review the 1995 appraisal and compensate Fleet for $450,000. (Defendant's exhibit F). ASA responded by letter dated, June 21, 1999, that it stands by its original appraisal. (Defendant's exhibit I). In a memorandum dated June 24, 1999, from Susan Anderson at Fleet to Mary Hood, Anderson states that ASA stands by the $1,070,000 value, give or take ten percent, if the condition of the property has [not] changed." (Defendant's exhibit J). The affidavit of Jeffrey Hall, president of ASA Real Estate Services, Inc., states that "at no time after September 27, CT Page 12000 1995, did ASA or its agents, servants, or employees make any corrections to the original appraisal, create an amended appraisal in connection with the subject property; or perform any additional professional work in connection with this matter. . . [t]hat in response to Fleet's inquiry, ASA forwarded copies of the original appraisal report, together with Mr. Athorn's draft appraisal report and other contents of the original file . . . [t]hat in its complaint Fleet is now referring to the material sent to it in June 1999 as the amended appraisal." (Affidavit of Jeffrey Hall, ¶¶ 8, 11, 12).
Upon viewing the allegations in the light most favorable to Fleet, there is no genuine issue of material fact as to whether an amended appraisal exists. Furthermore, the court finds that ASA shows the non existence of any genuine issue of material fact as to whether an amended appraisal on the property was created. Therefore, the court finds that no genuine issue of material fact exists as to whether there was later wrongful conduct on the part of ASA relating to the alleged original wrong. The court reiterates that "[a]lthough the party seeking summary judgment has the burden of showing the nonexistence of any material fact. a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) Buell Industries, Inc. v. Greater New York Mutual InsuranceCo., 259 Conn. 527, 550, 791 A.2d 489 (2002).
Viewing the allegations in the light most favorable to Fleet, there is no genuine issue of material fact with respect to whether ASA owed a continuing duty to Fleet. Because the court finds that ASA does not owe a continuing duty to Fleet, it follows that the court need not consider if any genuine issue of material fact exists as to whether ASA continually breached any duty to Fleet.
Based on the foregoing reasons, the court finds that no genuine issue of material fact exists as to whether the continuing course of conduct doctrine applies to the underlying claim of professional negligence to toll the statute of limitations. Because professional negligence is a tort and governed by § 52-577, Fleet's claim is time barred. ASA's motion for summary judgment as to count one is therefore granted.
 II. COUNT TWO CT Page 12001 Breach of Contract
Count two of Fleet's complaint alleges breach of contract. ASA moves for summary judgment on the ground that count two is barred by the statute of limitations, pursuant to § 52-577 because the allegations are identical to those contained in count one, and, therefore, it is a negligence claim, not a breach of contract claim. ASA argues that Fleet cannot "transform a negligence or tort claim by clothing it in the language of contract." (Defendant's memorandum, pg. 11, ¶ 3).
In opposition to ASA's motion for summary judgment, Fleet argues that its breach of contract claim is distinct from its negligence claim, and is therefore timely. Furthermore, Fleet argues that the determination of the existence of a contract is a question of fact, and, therefore inappropriate to decide by way of summary judgment.
At issue is whether the court can conclude, as a matter of law, that no contract existed between ASA and Fleet. "The key elements of a breach of contract action are: (1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the other party and (4) damages." (Citation omitted). Alcoa Composites, Inc. v. BondedTechnology, Inc., Superior Court, judicial district of Middlesex at Middletown, Docket No. CV 00 0093208 (May 2, 2002, Wolven, J.). Fleet alleges that Shawmut Bank and ASA entered into written and oral agreements "for the performance of appraisal services in connection with Shawmut's issuance [of] mortgages." (Plaintiff's complaint, ¶ 32). Fleet argues, as successor in interest to Shawmut Bank, that it acquired all of Shawmut's rights and obligations under the agreements with ASA. Fleet alleges that these agreements required ASA to perform appraisal services in a non negligent manner. Fleet alleges these contracts were in full force in 1995, at the time ASA performed the appraisal and that ASA breached these contracts by negligently performing the 1995 appraisal on the property. (Plaintiff's complaint, ¶¶ 33, 35). Fleet alleges ASA breached these agreements in numerous ways and as a result Fleet incurred damages.
"The existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence. . . . To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties. . . ." Cheverie v. Ashcraft Gerel,65 Conn. App. 425, 439, 783 A.2d 474, cert. denied, 258 Conn. 932, CT Page 12002785 A.2d 228 (2001). "Just as putting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender;. . . putting a contract tag on a tort claim will not change its essential character. An action in contract is for the breach of a duty arising out of a contract; an action in tort is for a breach of duty imposed by law." (Citations omitted; internal quotation marks omitted.) Gazo v. City of Stamford, 255 Conn. 245,263, 765 A.2d 505 (2001).
Construing Fleet's factual allegations in the light most favorable to Fleet, the court finds that genuine issues of material fact exist as to whether a contact did in fact exist between ASA and Fleet and, if so, whether that contract was breached. Count two of Fleet's complaint does allege a breach of a duty arising from the alleged contract, as opposed to a breach of duty imposed by law. Count two is therefore not a negligence claim disguised as a contract claim. As such, the applicable statute of limitations is § 52-576, which governs contract claims. Section 52-576 (a), states in relevant part, that "[n]o action . . . on any contract . . . shall be brought but within six years after the right of action accrues. . . ." Because Fleet's cause of action alleging breach of contract presents genuine issues of material fact and is timely pursuant to § 52-576, ASA's motion for summary judgment as to count two is accordingly denied.
 III. COUNT THREE
Breach of the Implied Covenant of Good Faith and Fair Dealing
Count three of Fleet's complaint alleges a breach of the implied covenant of good faith and fair dealing. To support its claim, Fleet incorporates by reference paragraphs one through thirty seven of its complaint and additionally alleges that "[a]s in all contracts, the contract between Fleet as successor-in-interest to Shawmut, and ASA contained an implied covenant of good faith and fair dealing, which covenant required that ASA act fairly in performing appraisal services under the contract and that ASA perform its appraisal services in a non-negligent manner." (Plaintiff's complaint, ¶ 38). "The conduct of ASA as aforementioned breached that implied covenant of good faith and fair dealing, causing Fleet damages for which ASA is liable." (Plaintiff's complaint, ¶ 39).
In support of its motion for summary judgment, ASA argues that Fleet's claim of breach of the implied covenant of good faith and fair dealing is a tort claim, not a contract claim. The claim is therefore governed by § 52-577, which imposes a three year statute of limitations. In CT Page 12003 opposition, Fleet argues that it is a contract claim, governed by §52-576, and therefore subject to a six year statute of limitations.
"[T]he implied duty of good faith and fair dealing is a covenant implied into a contract or contractual relationship." Hoskins v. TitanValue Equities Group, Inc., 252 Conn. 789, 793, 749 A.2d 1144 (2000). "Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Gaudio v.Griffin Health Services Corporation, 249 Conn. 523, 564, 733 A.2d 197
(1999). "[B]ad faith is defined as the opposite of good faith, generally implying a design to mislead or to deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties. . . . bad faith is notsimply bad judgment or negligence, but rather . . . the conscious doingof a wrong because of dishonest purpose or moral obliquity. . . ." (Emphasis added; internal quotation marks omitted). Buckman v. PeopleExpress, Inc., 205 Conn. 166, 171, 530 A.2d 596 (1987). "[E]ven with respect to questions of motive, intent and good faith, the party opposingsummary judgment must present a factual predicate for his argument inorder to raise a genuine issue of fact." (Emphasis added) WadiaEnterprises, Inc. v. Hirschfeld, 224 Conn. 240, 250, 618 A.2d 506
(1992).
Upon viewing the allegations in the light most favorable to Fleet, there is no evidence before this court that presents any genuine issue of material fact as to whether ASA acted in bad faith. Fleet does not present the necessary factual predicate to support its claim of breach of the implied covenant of good faith and fair dealing. Accordingly, Fleet's claim fails, regardless of the statute of limitations. ASA's motion for summary judgment as to count three is therefore granted.
 IV. COUNT FOUR Negligent Misrepresentation
Negligent misrepresentation is a tort and is therefore subject to a three year statute of limitations pursuant to § 52-577. For the reasons articulated in count one of this memorandum, the court finds that the continuing course of conduct doctrine does not apply to toll the statute of limitations. This claim is time barred. ASA's motion for summary judgment as to count four is therefore granted.
 V. COUNT FIVE CT Page 12004 Breach of Fiduciary Duty
Breach of fiduciary duty is a tort and is therefore subject to a three year statute of limitations pursuant to § 52-577. For the reasons articulated in count one of this memorandum, the court finds that the continuing course of conduct doctrine does not apply to toll the statute of limitations. This claim is time barred. Because this claim is time barred, the court need not consider whether the Fleet's allegations of breach of fiduciary duty would independently fail as a matter of law. ASA's motion for summary judgment as to count five is therefore granted.
 VI. COUNT SIX Breach of Implied Contract
Count six of Fleet's complaint alleges breach of implied contract. ASA moves for summary judgment on the ground that the claim is time barred pursuant to § 52-577 because the claim sounds in tort, not contract. ASA argues that Fleet is attempting to circumvent the three year statute of limitations by labeling the claim as one based in contract, when it is really a claim based in tort.
In opposition to the motion for summary judgment, Fleet argues it properly sets forth an action for a breach of implied contract between itself and ASA and therefore the claim is timely pursuant to is §52-576, which governs contract claims.
Fleet alleges, inter alia, that "ASA, by its words, actions and conduct, agreed to perform appraisal services in connection with Shawmut's issuance mortgages, for which Shawmut paid to ASA good and valuable consideration. As a result an implied contract existed between the parties." (Plaintiff's complaint, ¶ 29). "This implied contract was in full force and effect at the time ASA performed its appraisal of the subject [p]roperty in 1995. At all times material hereto, ASA recognized the existence of this implied contract, and of its obligations thereunder." (Plaintiff's complaint, ¶ 30). "Shawmut Bank, in reasonable and justifiable reliance upon ASA's words, actions and conduct, engaged and paid valuable consideration to ASA for it to perform such appraisal services. Notwithstanding Shawmut's performance of its obligations, ASA breached its implied contract with Shawmut . . . and, as a result Fleet, as successor in interest to Shawmut . . . has suffered severe financial harm, detriment and damages." (Plaintiff's complaint, ¶¶ 31, 32).
"A contract implied in fact depends on an actual agreement that there CT Page 12005 be an obligation created by law that imposes a duty to perform, and it may be inferred from words, actions or conduct. . . . A true implied contract can only exist where there is no express one. It is one which is inferred from the conduct of the parties though not expressed in words. . . . Specifically, [t]he intention of the parties manifested by their words and acts is essential to determine whether a contract was entered into and what its terms were. . . . A contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties." (Citations omitted; internal quotation marks omitted.) Silva v. New York Life Insurance Co., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV97 0342973 (Jan. 12, 2001, Skolnick, J.). "Whether and on what terms a contractual commitment has been undertaken are ultimately questions of fact. . . ." Sandella v. Dick Corp.,53 Conn. App. 213, 219, 729 A.2d 813, cert. denied, 249 Conn. 926, 733 A.2d 849 (1999). Furthermore, "[w]hether or not an implied contract existed and was breached is an unresolved material issue of fact based upon the intent and conduct of the parties."Abou-Saif v. Cedarcrest Condo Assoc., Superior Court, judicial district of New Haven, Docket No. CV 95 0375338 (November 1, 2000, Licari, J.).
Upon viewing the allegations in the light most favorable to Fleet, the court finds that genuine issues of material fact do exist as to whether there was an implied contract between Fleet and ASA and whether that contract was breached. Accordingly, ASA's motion for summary judgment as to count six is denied.
 CONCLUSION
Based upon the foregoing reasons, ASA's motion for summary judgment as to professional negligence (count I); breach of the implied covenant of good faith and fair dealing (count three); negligent misrepresentation (count IV); and breach of fiduciary duty (count V) is granted. ASA's motion for summary judgment as to breach of contract (count II) and breach of implied contract (count VI) is denied.
By The Court,
Judge Carol Wolven CT Page 12006